Maria Luisa Castro LOPEZ et al.,
Plaintiffs-Appellants,

Benita Ramos Acosta et al., Intervenors,

v.

Jose E. ARRARAS, etc., et al.,
Defendants-Appellees.

No. 79–1010.

United States Court of Appeals,
First Circuit.

Argued June 8, 1979.

Decided Oct. 10, 1979.

348

Maria Dolores Fernos, Hato Rey, P. R., with whom Manuel E. Moraza Choisne, Hato Rey, P. R., and Frances Diaz Medina, Bayamon, P. R., were on brief, for plaintiffs-appellants.

Lorraine Riefkohl de Lopez, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for defendants-appellees.

BOWNES, Circuit Judge.

This appeal is brought by Maria Castro Lopez, et al., tenants in federally funded low income housing projects in Puerto Rico. In 1974, appellants brought this class action[1] against Jose E. Arraras,[2] the Secretary of the Housing Department of Puerto Rico, Julio Negroni, Executive Director of the Puerto Rico Water Resources Authority, and Pedro Hernandez, Executive Director of the Puerto Rico Aqueducts and Sewers Authority. Appellants alleged that the appellees' failure to comply with the Brooke Amendment to the Housing Act of 1937, 42 U.S.C. § 1437a(1)[3] violated their rights under 42 U.S.C. §§ 1983 and 1985 and the fifth and fourteenth amendments to the United States Constitution, and they sought injunctive and declaratory relief as well as monetary damages.

The facts are relatively straightforward and are not contested. The Brooke Amendment to the Housing Act provided that a public housing agency could not charge a tenant "gross rent" in excess of twenty-five percent of a tenant's income. According to 24 C.F.R. 860.403,

> Gross rent means contract rent plus the PHA's [Public Housing Agency] estimate of the costs to the tenant of reasonable quantities of utilities determined in accordance with the PHA's schedule of allowances for such utilities, where such utilities are purchased by the tenant and not included in the contract rent.

Appellants brought this action alleging that appellees failed to revise the utility allowances to conform with the Brooke Amendment and that, as a result of the inaction, their gross rent exceeded the maximum allowed by law. Appellees did not deny the allegations, but answered that they lacked the funds to implement the changes.

The district court dismissed the complaint on the basis that the eleventh amendment barred retroactive relief, relying principally on *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Appellants

---

1. The appellants' request for class certification was not passed on because the district court dismissed the action, rendering the petition for certification moot.

2. Arraras was replaced as Secretary of the Housing Department by Jorge A. Pierluisi in late 1977.

3. 42 U.S.C. § 1437a(1) was previously codified as 42 U.S.C. § 1402(1). It provides in pertinent part:

§ 1437a. Definitions

When used in this chapter—
(1) The term, "low-income housing" means decent, safe, and sanitary dwellings within the financial reach of families of low income, and embraces all necessary appurtenances thereto. Except as otherwise provided in this section, income limits for occupancy and rents shall be filed by the public housing agency and approved by the Secretary. The rental for any dwelling unit shall not exceed one-fourth of the family's income as defined by the Secretary.

argue on appeal that *Edelman v. Jordan* is distinguishable, and cite *Meade v. Hawaii*, No. 74–46 (D.Haw. April 15, 1975), as authority for their position that a remedy can be fashioned which would avoid entanglement in the commonwealth's treasury. We do not reach the eleventh amendment arguments because we hold that the case must be remanded for two reasons. First, we have serious doubts concerning the district court's jurisdiction over appellees. Second, we conclude that, if there is jurisdiction, HUD is a necessary party to this suit and ought to be joined so that the case can be properly and clearly resolved.

The procedural history of the case is somewhat opaque. It appears that another defendant was added at some time, the Executive Director of the Housing and Urban Department Corporation of Puerto Rico (Corporacion de Renovacion Urbana y Vivienda de Puerto Rico or CRUV). Although there is nothing in the record showing formal joinder of the director of CRUV as a party, our examination of P.R.Laws Ann. tit. 3 § 441e reveals that the Secretary of the Housing Department, formerly Arraras, oversees CRUV, which might explain CRUV's involvement in the case.

In 1975, appellants, Arraras, and counsel for CRUV[4] entered into a stipulation. Arraras and CRUV agreed to revise the utility rate allowance prospectively beginning July 1, 1976, so that it would be in compliance with the requirements of the Brooke Amendment. The parties agreed to submit to the district court the following legal issues.

a. Whether plaintiffs are entitled to retroactive benefits for any period of time comprised between April 24, 1970 and July 1, 1976 in view of defendant's position that (1) a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; and (2) the Commonwealth of Puerto Rico [*sic*] financial inability to implement the revised rates as specified in paragraph (3) of the stipulation.

On July 3, 1977, the district court ordered the parties to submit additional information concerning CRUV's source of funding, the potential effect equitable restitution would have on Puerto Rico's treasury, the possibility that the Federal Department of Housing and Urban Development (HUD) would supply compensation for CRUV's deficits resulting from an adverse judgment, and state administrative and judicial remedies available to appellants. Appellants complied with the court's order[5] and appellees responded by filing a motion to dismiss on October 13, 1977, for failure to join HUD, an allegedly indispensable party, under Fed. R.Civ.P. 19(a)(1). On November 18, 1977, appellees filed the information requested by the court, once again asserting that the action should be dismissed, this time on the grounds that recovery was barred by the eleventh amendment.

The district court rejected appellees' argument that HUD was an indispensable party, for in its view, it did not appear that the appellants had a cause of action against HUD and it was unwilling to penalize appellants for appellees' failure to bring a third party action against HUD. The court noted that it was "aware of the fact that plaintiffs were damaged by defendants' failure to put into effect the revised utility schedule as required by the Brooke Amendment, 42 U.S.C. § 1402(1)" but decided that an order compelling payment of retroactive benefits would have a direct effect on Puerto Rico's treasury. This conclusion was

---

4. Appellants' brief refers to the Executive Director of CRUV as a party defendant while the stipulation lists CRUV itself as "co-defendant." It is unclear whether either or both the Executive Director or CRUV is actually a party, but in light of our decision to remand, there is not presently a need to tarry on this point.

5. Unfortunately, the material submitted by appellants on these crucial issues is not a part of the record on appeal.

based primarily on a letter from HUD's director of the Housing Management Division, which we discuss later. *Infra* at 352. The court also rejected appellants' argument that Puerto Rico's involvement in the federally financed housing program amounted to a waiver of its sovereign immunity, and for all of these reasons dismissed the case. This appeal followed the denial of appellants' motion for reconsideration.

■ In its opinion dismissing the action, the district court adverted to the court's jurisdiction in a footnote, stating: "Needless to say, we find no jurisdictional defects in this action. In any event, the same are not susceptible of waiver and could be invoked at any time." The Secretary of the Housing Department in a motion to dismiss filed in 1974, contended that the appellants, as individual lessees, did not present a claim that satisfied the $10,000 jurisdictional requirement of 28 U.S.C. § 1331(a).[6] However, the appellees do not argue this on appeal. Nevertheless, we are obligated to examine the question of jurisdiction since the question of subject matter jurisdiction is always open for determination. *See* Fed. R.Civ.P. 12(h)(3); *Mansfield, Coldwater & Lake Michigan Railway v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884); C. Wright, Handbook of the Law of Federal Courts 18 (3d ed. 1976). We do not share the district court's confidence that it had subject matter jurisdiction to entertain the instant case as presently framed.

On remand the district court should determine whether or not appellants can meet 28 U.S.C. § 1331(a)'s requirement that "the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs . . . ." The standard by which to measure appellants' claims was enunciated in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. [Citations omitted.]

*See Local Division No. 714 v. Greater Portland Transit District*, 589 F.2d 1, 9 (1st Cir. 1978); *Jimenez Puig v. Avis Rent-A-Car System*, 574 F.2d 37, 39 (1st Cir. 1978); 14 Federal Practice & Procedure: Jurisdiction, Wright, Miller & Cooper, § 3702 at 369–73 (1976).

■ Appellants' amended complaint meets the facial requirements of 28 U.S.C. § 1331(a) since the prayer for relief asks that each tenant receive $15,000 "for the damages suffered because of defendants' actions and rents paid in excess from December 22, 1971." Appellants never clearly specified what these "damages" were. Appellants Castro Lopez and Cruz Romero, as well as subsequent intervenors, did enumerate the sums which they owed for electricity and water for a two month period.[7] However, these individual sums, when multiplied out over the time involved, would not appear to bring the claims within the $10,000 requirement. At oral argument, counsel for appellants was specifically asked how much money was involved and she responded that, while she could not be exact, the individual sums would not be large and might involve as little as a dollar

---

**6.** 28 U.S.C. § 1331(a) provides:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

**7.** For example, Maria Castro Lopez alleged that her electric bill for two months was $93.20 and her water bill was $2.60. The Housing Department determined that she was entitled to a utilities allowance of $4.78 per month. Carmen Cruz Romero alleged that her utilities bill for two months was $36.29 with a water bill of $15.00. Her utilities allowance was $6.03 per month.

or so for some of the tenants. It is well established that in a class action, when two or more plaintiffs having separate and distinct claims unite for convenience and economy, each member of the class must satisfy the jurisdictional amount requirement. *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Local Division No. 714 v. Greater Portland, supra*, 589 F.2d at 9–10; *Hahn v. Gottlieb*, 430 F.2d 1243, 1245 n.1 (1st Cir. 1970); 1 Moore's Federal Practice [¶ 0.97[5] at 964–70 (2d ed. 1979). Since the record raises a serious question as to amount jurisdiction, there must be a finding by the district court. It should determine whether to anyone familiar with the applicable law the claim of each tenant could objectively be viewed as worth in excess of $10,000. *Jimenez Puig v. Avis, supra*, 574 F.2d at 40.

■ Appellants also claim that there is a federal jurisdiction over their statutory section 1983 claim based on 28 U.S.C. § 1343(3) or (4).[8] This claim has been foreclosed in the wake of *Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). In *Chapman*, the Court rejected petitioners' claim that section 1343(3) or (4) provided a jurisdictional basis in conjunction with 1983 for their claim that a state statute was invalid because it conflicted with the Social Securi-

ty Act. Mr. Justice Stevens, writing for the majority held:

> It follows from what we have said thus far that § 1343 does not confer federal jurisdiction over the claims based on the Social Security Act unless that Act may fairly be characterized as a statute securing "equal rights" within § 1343(3) or "civil rights" within § 1343(4). The Social Security Act provisions at issue here authorize federal assistance to participating States in the provision of a wide range of monetary benefits to needy individuals, including emergency assistance and payments necessary to provide food and shelter. Arguably, a statute that is intended to provide at least a minimum level of subsistence for all individuals could be regarded as securing either "equal rights" or "civil rights." We are persuaded, however, that both of these terms have a more restrictive meaning as used in the jurisdictional statute.

*Id.* at —— – ——, 99 S.Ct. at 1917. Following the teaching of *Chapman*, we rule that there is no jurisdictional basis for appellants' claim under 28 U.S.C. § 1343(3) or (4), because the Housing Act, and more specifically the Brooke Amendment cannot be readily viewed as securing "equal rights" or "civil rights."

■ We next consider the second reason for remanding the case; so that HUD, a necessary party to the suit, can be joined under Fed.R.Civ.P. 19(a),[9] Appellee Secre-

**8.** 28 U.S.C. § 1343(3) and (4) provide:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

**9.** Fed.R.Civ.P. 19(a) provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process

and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue

tary of the Housing Department raised this issue in an early motion to dismiss back in 1974 and again in 1977 in response to the court's order to file informational memoranda. The Secretary argued that the "final say as to the availability of the requested funds rests solely upon the Federal Housing Authority and the Federal Department of Housing and Urban Development." He buttressed his position with a letter from HUD's Director of the Housing Management Division, which stated in relevant part:

> This is in regard to your inquiry of April 26, 1976, about the availability of federal funds to provide for the payments of retroactive benefits to families in public housing as related to the subject case. Pursuant to your inquiry, we contacted our New York Regional Office in subject respect and we are sorry to inform there are no federal funds available for said reimbursements.

Appellants filed a motion opposing the motion to dismiss, asserting that HUD was not an indispensable party since it was CRUV, the local housing authority, and not HUD that was at fault in failing to follow the mandate of the Brooke Amendment. Appellants contend that they have no cause of action against HUD and that they should not be ousted from court due to appellees' failure to bring a third party action against HUD. The district court adopted appellants' position, noting,

> defendants' efforts to include H.U.D. as an indispensable party hereto are but attempts to transfer their load to plaintiffs. If defendants believed that the presence of H.U.D. was necessary in order for plaintiffs to obtain a relief herein (which

argument is unconvincing), they could still resort to an action against H.U.D. Their failure to do so may not be held against plaintiffs.[10]

Without HUD, complete relief cannot be accorded among the parties, Fed.R.Civ.P. 19(a)(1). It is elementary that only those who are parties to a suit will be bound by the court's judgment. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Griffin v. Burns*, 570 F.2d 1065, 1070–71 (1st Cir. 1978); 1B Moore's Federal Practice ¶ 0.411[1] (1974). Appellants urge that we follow *Meade v. Hawaii Housing Authority*, No. 74–46 (D.Haw. April 15, 1975), where the court, under similar factual circumstances, concluded that the local housing authority's liability for noncompliance with the Brooke Amendment would be borne by HUD. The court was able to leap over the hurdle of the eleventh amendment by tying the tenants' recovery to HUD funds, thus leaving state funds unaffected. In their verve to embrace *Meade*, appellants overlooked one essential distinguishing factor between that case and the instant action, *viz.*, HUD was a party in *Meade*. Therefore, appellants' request that we fashion the kind of award tailored in *Meade* to reach only HUD monies would be meaningless and unenforceable where HUD is not a party. Without the joinder of HUD, "the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." Advisory Committee's Note to proposed Fed.R.Civ.P. 19(a)(1), published in 39 F.R.D. at 91 (1966).[11]

and his joinder would render the venue of the action improper, he shall be dismissed from the action.

10. The parties and the district court seem to have used the words "indispensable" and "necessary" interchangeably. The rule, Fed.R. Civ.P. 19(a) & (b), requires that they be treated differently. In other words, HUD could be "necessary" to this action in the sense it ought to be joined as a defendant if feasible, Rule 19(a), even though it might not be "indispensable" in the sense that dismissal would be war-

ranted if joinder were infeasible, Rule 19(b). As discussed *infra*, we believe it is both desirable and feasible that HUD be joined, so the issue of sovereign immunity can be fully and fairly adjudicated.

11. Appellants argue for the first time on appeal that CRUV operating reserves are available to meet some or all of CRUV's liability and that a judgment would have no impact on the Commonwealth's treasury. Since this was not an argument before the district court, we have no

There is also the likelihood that disposition of this action in HUD's absence may as a practical matter impair or impede its ability to protect its interest in the funding relating to CRUV, Fed.R.Civ.P. 19(a)(2)(i). To date, HUD has not had a chance to explain the intricacies of its relationship with the local housing authority and the Commonwealth of Puerto Rico, and we are loath to resolve this controversy without affording HUD the occasion to fully present its position. *See Guesnon v. McHenry*, 539 F.2d 1075, 1077–78 (5th Cir. 1976) (joinder of HUD desirable so that HUD could explain one of its regulations); *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478–80 (6th Cir. 1972) (HUD a necessary party when the legality of its actions is at issue); *Gardner v. Nashville Housing Authority*, 468 F.2d 480, 481 (6th Cir. 1972) (same).

It is not necessary at this time to determine whether HUD is also an indispensable party under Fed.R.Civ.P. 19(b),[12] since it appears that it is feasible to join HUD.[13] Sovereign immunity is waived in 42 U.S.C. § 1404a, which provides in relevant part: "The United States Housing Authority may sue and be sued only with respect to its functions under this chapter . . . ." This is to be read in conjunction with 42 U.S.C. § 3534, which transferred to the Secretary of HUD all the functions, powers, and duties of the Housing and Home Financing Agency. Jurisdiction could be premised on 28 U.S.C. § 1331 which no longer requires a jurisdictional amount when a federal official or agency is sued.

In determining that HUD should be joined as a party in this action, we are guided by pragmatic considerations, which turn on the particular facts of this case. *Provident Tradesmens Bank & Trust Co. v. Patterson, supra*, 390 U.S. at 102, 88 S.Ct. 733, 19 L.Ed.2d 936; *Stevens v. Loomis*, 1 Cir., 334 F.2d 775 n.7 at 778; 7 Wright & Miller, Federal Practice & Procedure: Civil § 1604 at 35 (1972). From the record as it now stands, it is impossible for us to make a valid determination of whether the district court was correct in deciding that the eleventh amendment bars relief for the appellants.[14] Appellees admit that the rental housing programs "essentially operate" with funds from tenants' rental payments and federal subsidies.[15] Yet, they and the district court considered fatal to appellants the fact that a director of HUD's Housing Management Division reported in a terse note that the New York Regional Office decided that there were no federal funds available for the payment of retroactive

---

record evidence to guide us. On remand, this should be developed further.

**12.** Fed.R.Civ.P. 19(b) provides:

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**13.** *Compare Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (joinder not feasible because diversity jurisdiction would be destroyed); *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885 (5th Cir. 1979) (same); *American Guaranty Corp. v. Burton*, 380 F.2d 789 (1st Cir. 1967) (not feasible to join United States due to sovereign immunity).

**14.** We specifically reserve judgment on this issue.

**15.** We believe that the precise meaning of "essentially operates" ought to be clarified by appellees on remand. In *Maria Santiago v. Corporacion de Renovacion Urbana y Vivienda*, 554 F.2d 1210, 1212 (1st Cir. 1977), a suit not related to this case, we did note that CRUV is to some degree financially independent of the Commonwealth, citing P.R.Laws Ann. tit. 17 § 45a (power to issue $325,000 in bonds); P.R. Laws Ann. tit. 17 §§ 40, 90 (authority to collect rents to cover administrative and debt servicing expenses).

benefits. The authority and accuracy of this perfunctory message are of concern to us, since there is no explanation whatsoever of who made the decision and on what basis "there are no federal funds available for said reimbursements."

Although not cited by the district court, appellees also presented a letter from HUD's acting deputy director in which he explained that, under the terms of the Annual Contribution Contract, HUD pays out but one annual subsidy per project. While HUD may provide additional annual contributions for operating subsidies, these are subject to availability of funds and based upon Annual Operating Budgets approved by HUD on a case by case basis. In conclusion, the official stated:

> In view of the aforesaid, any deficit suffered by the Puerto Rico Urban Renewal and Housing Corporation as a result of an eventual judgment against defendants in the present case was not covered by the Operating Budgets approved by HUD for the corresponding years which in turn participated of Congressional appropriations for same years and, consequently, cannot be compensated by HUD.

While it may be that past HUD contributions are fixed, so that no funds are available to meet CRUV deficits for past years or to provide retroactive benefits, this does not foreclose the possibility of relief in the form of future rent credits. HUD might then reimburse CRUV for its liability through future annual contributions and future congressional appropriations.

In summary, we remand to the district court with directions that it determine if there is jurisdiction over appellees and to join HUD as a necessary party under Fed. R.Civ.P. 19(a).

*Remanded for proceedings consistent with this opinion.*