In re **HEMINGWAY TRANSPORT, INC., Bristol Terminals, Inc., Debtors.**

**JUNIPER DEVELOPMENT GROUP, A Massachusetts Partnership and George D. Whitten, Amy Whitten and Charles Whitten as Trustees of the 60 Olympia Nominee Trust, Plaintiffs,**

v.

Herbert **KAHN, Trustee for Hemingway Transport, Inc. and Bristol Terminals, Inc., Defendants.**

Bankruptcy Nos. 82–01340–JNG, 82–01341–JNG.

Adv. No. A86–1081–JNG.

United States Bankruptcy Court, D. Massachusetts.

March 2, 1987.

Louis N. Massery, Cooley, Manion, Moore & Jones, P.C., Boston, Mass., for Juniper Development.

Andrew S. Hogeland, Asst. U.S. Atty., Boston, Mass., for U.S. Dept. of E.P.A.

Judy Mencher, Goodwin, Procter & Hoar, Boston, Mass., for trustee.

JAMES N. GABRIEL, Chief Judge.

## BACKGROUND

The above named plaintiffs (the "plaintiff" or "Juniper"), on May 8, 1986, commenced this adversary proceeding against Herbert Kahn, the Chapter 7 Trustee of Bristol Terminals, Inc. and Hemingway Transport, Inc. (collectively, the "Debtor" or "Hemingway").[1] In its complaint, Juniper alleges inter alia 1) that the Debtor, on or about May 18, 1983, while in Chapter 11,[2] sold Juniper the land and buildings now known as 60 Olympia Avenue, Woburn, Massachusetts free and clear of all liens and encumberances; 2) that, at the time of the sale, the Debtor knew or had reason to know that an administrative order had been issued by the Massachusetts Department of Environmental Quality Engineering (the "DEQE"), requiring the Debtor to clean up approximately twelve barrels of hazardous wastes on an isolated portion of the Debtor's property; 3) that both the Bankruptcy Court and the United States District Court for the District of Massachusetts authorized the May 18th sale;[3] 4) that the Debtor concealed the DEQE order from Juniper; and 5) that the United States Environmental Protection Agency (the "EPA") discovered the barrels in September of 1985 and subsequently issued an administrative order requiring Juniper to remove the barrels and to perform investigative work.

Juniper's complaint contains three counts. In count I, Juniper alleges that the Trustee is a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C.A. §§ 9601–9657 (West 1983 & Supp. 1986) ("CERCLA"). Juniper seeks contribution from the Trustee for all past and future costs of cleanup in that count. In count II, Juniper alleges fraud and breach of warranties on the part of the Debtor in conjunction with the sale. It seeks judgment in indemnity for all present and future costs of cleanup in count II. As an alternative remedy, Juniper, in count III, alleges a fraudulent conveyance and seeks recision of the sale and the return of the purchase price and other expenses incident to the sale.

---

**1.** The Debtors have been jointly administered since July 28, 1982, the date they filed their petitions under Chapter 11 of the Bankruptcy Code.

**2.** Both Chapter 11 cases were converted to cases under Chapter 7 on November 29, 1983.

**3.** The so-called Emergency Rule was then in effect. It required that the sale of the Woburn property be approved by both the District Court and the Bankruptcy Court. This Court authorized the sale on April 29, 1983. The District Court entered an order approving the April 29th Bankruptcy Court order on May 3, 1983.

On July 11, 1986, prior to the Court's scheduled pre-trial conference, Juniper filed a Motion for Joinder of the EPA as a party plaintiff. As reasons for its motion, Juniper stated that it had commenced the cleanup of the Olympia Avenue property and had incurred expenses of approximately $30,000 pursuant to the administrative order of the EPA. Additionally, Juniper indicated that the EPA had ordered Juniper to conduct further testing. Juniper complained that the EPA had not advised it of the extent of its liability under CERCLA. Because of the actions taken by the EPA, Juniper concluded that the EPA is a necessary party within the meaning of Fed.R. Civ.P. 19(a).[4]

The United States opposed the joinder of the EPA as a party plaintiff. It argued forcefully, and this Court believes correctly, that 1) Juniper's motion is barred by the doctrine of sovereign immunity; and 2) the motion improperly seeks pre-enforcement review of an EPA decision. It also argued, less compellingly, that the EPA is not a necessary party.

## DISCUSSION

The statutory background of CERCLA is succinctly set forth in *B.R. MacKay & Sons, Inc. v. United States*, 633 F.Supp. 1290 (D.Utah 1986). According to the district court in that case, "CERCLA was designed to bridge gaps in pre-existing statutes by establishing the authority and the funding for the EPA to take immediate cleanup action, without the need to await administrative and judicial determinations of liability." *Id.* at 1293. *See* S.Rep. No. 848, 96th Cong., 2d Sess. 8, 11–12, 22, 56, 62 (1980). Pursuant to section 104(a) of CERCLA, the EPA is authorized to clean up or otherwise respond to a release or threatened release of hazardous substances or "any pollutant[s] or contaminant[s] which may present an imminent and substantial danger to the public health or welfare...." 42 U.S.C.A. § 9604. Cleanups may be financed through the Hazardous Substance Response Trust Fund established by section 221(a) of CERCLA. *Id.* at § 9631(a). Section 111 permits private parties to recover response costs that are consistent with the national contingency plan from the fund. *Id.* at § 9611. Additionally, section 107 creates a private right of action against parties responsible for the release of hazardous substances. *Id.* at § 9607. Section 107 inter alia defines responsible parties under CERCLA, and sets forth what those parties may be liable for, as well as various affirmative defenses that may be available to them. *Id.*[5]

---

**4.** Federal Rule of Civil Procedure 19(a) provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

**5.** Section 107 provides in pertinent part:

(a) Covered persons; scope

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such

In its memorandum in support of its motion, Juniper emphasizes its view that it cannot be afforded complete relief in its suit against the Trustee, which suit is predicated, at least in part, on 42 U.S.C. § 9607, unless it obtains an advisory opinion from the EPA as to the extent of its liability. Citing *Lopez v. Arraras*, 606 F.2d 347 (1st Cir.1979) and *Ricci v. Callahan*, 97 F.R.D. 737 (D.Mass.1983), Juniper maintains that governmental agencies may be joined if the agency is a party needed for complete relief.

The Court is not persuaded by the cases cited by Juniper. For example, Juniper misreads *Lopez v. Arraras*. In that case, the United States Court of Appeals for the First Circuit remanded the proceeding, a class action brought by tenants in a federally funded low income housing project against the Secretary of the Housing Department of Puerto Rico for failure to comply with the Brooke Amendment to the Housing Act of 1937, 42 U.S.C. § 1437a(1), because it appeared that joinder of the Department of Housing and Urban Development ("HUD") was feasible under Fed.R. Civ.P. 19(b). In reaching its decision, the court specifically found that sovereign immunity was waived under the applicable statutes. *Lopez v. Arraras*, 606 F.2d at 353.

Additionally, the Court is not persuaded that *Ricci v. Callahan*, 97 F.R.D. 737 (1983) is similar. In that case, Judge Tauro of the United States District Court for the District of Massachusetts ordered the joinder of the United States Department of Health and Human Services ("HHS") pursuant to Fed.R.Civ.P. 19 in consolidated cases concerning five Massachusetts institutions for the retarded. The operation of the institutions was guided by the terms of consent decrees that required the Commonwealth of Massachusetts to maintain the institutions in a manner consistent with Title XIX of the Social Security Act. Since HHS is entrusted with monitoring compliance with Title XIX standards, the district court ordered its joinder. However, the court's reported decision contains no discussion of sovereign immunity. Indeed, there is absolutely no indication that HHS opposed joinder.

Juniper raises two additional arguments. It argues that public policy considerations compel joinder of the EPA, citing *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (*In re Quanta Resources Corporation*), and it asserts that waiver of sovereign immunity is irrelevant when a governmental agency is sought to be joined as a

---

person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
(b) Defenses
There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
(1) an act of God;

(2) an act of war;
(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
(4) any combination of the foregoing paragraphs. . . .
42 U.S.C.A. § 9607 (West 1983 & Supp. 1986).

party plaintiff, citing *Babcock v. Maple Leaf, Inc.*, 424 F.Supp. 428 (E.D.Tenn. 1976). In short, with respect to the latter argument, Juniper insists that its request for an advisory opinion from the EPA does not amount to a suit against the EPA, and, accordingly, sovereign immunity is inapplicable.

The Court does not read the *Midlantic National Bank* case as broadly as does the plaintiff. Although the United States Supreme Court evidenced a strong concern for public health and safety in the face of the environmental hazards created by a bankruptcy trustee's abandonment of property containing toxic wastes, its holding does not address, let alone abrograte, the doctrine of sovereign immunity. Quite simply, the Supreme Court held:

> ... Congress did not intend for § 544(a) to pre-empt all state and local laws. The Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety ... [W]e hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health and safety from identified hazards.

106 S.Ct. at 762 (footnote omitted). While the Court sympathizes with Juniper's unenviable position as a potentially responsible party under CERCLA, the Court is unable to conclude that the Supreme Court's recent opinions in *Midlantic* and in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), a case in which the Supreme Court held that a bankrupt's obligation under an injunction was a debt or liability on a claim subject to discharge under the Bankruptcy Code, in anyway require it to give precedence to the public policy of compliance with environmental laws when that policy is juxtaposed with the doctrine of sovereign immunity.

Moreover, the Court is not convinced that the joinder of the EPA as a party plaintiff and the request for an advisory opinion do not amount to a suit against the EPA. The case cited by Juniper, *Babcock v. Maple Leaf, Inc.*, 424 F.Supp. 428 (E.D.Tenn. 1976), simply does not stand for that proposition. In *Babcock*, the court considered a case bought by an ex-serviceman against a tortfeasor. A federal statute provides that if the United States is authorized or required to provide medical services for injuries to ex-servicemen resulting from the negligence or wrongful acts of a third party, it can recover the costs of treatment in a suit against the responsible third party. *Cf.* 42 U.S.C. § 2651(a) and (b). In *Babcock*, the district court merely held:

> Before the Court can order a joinder of parties who should be additional plaintiffs in a lawsuit ... Rule 19(a) provides that such parties must first refuse to join voluntarily. Since there is no indication that the Government would not join in this lawsuit if given notice and opportunity to do so, the Court will allow the Government a period of time in which it may intervene in this action as a party plaintiff.

424 F.Supp. at 431 (citations omitted).

 In its memorandum, the United States clearly and unequivocally sets forth the parameters of the doctrine of sovereign immunity. In the absence of a specific congressional waiver, sovereign immunity bars any suit against the United States. *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819). Neither an agency nor an official may by any act, overt or implied, waive sovereign immunity. *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). Similarly, congressional consent may not be implied; rather it must be unequivocally expressed and strictly and narrowly construed. *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1181, 75 L.Ed.2d 840 (1983); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Furthermore, even if the United States is deemed to be a necessary party, that position does not affect or constitute a waiver of its sovereign immunity. *Idaho ex rel. Evans v. Oregon*, 444 U.S. 380, 100 S.Ct. 616, 62 L.Ed.2d 564 (1980).

The United States also argues that Juniper is not entitled to obtain an adjudication of its liability under CERCLA before the federal government independently decides to bring suit against it for costs and remedies at the 60 Olympia Avenue site. Juniper has cited no case to contradict the position taken by the United States that Congress did not intend to allow potentially responsible persons to adjudicate their liability before the commencement of a federal enforcement action. According to the United States, the allowance of EPA advisory opinions would permit potentially responsible parties to block or delay response actions by diverting agency time, personnel and resources. Indeed, courts have consistently held that the United States cannot be sued under CERCLA and that a potentially responsible party must await a cost recovery action by the government before liability for the cleanup can be determined. *See, e.g., Wheaton Industries v. United States Environmental Protection Agency,* 781 F.2d 354 (3d Cir.1986); *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882 (3d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *J.V. Peters & Co. v. Administrator, E.P.A.,* 767 F.2d 263 (6th Cir.1985); *B.R. MacKay & Sons, Inc. v. United States of America,* 633 F.Supp. 1290 (D.Utah 1986); *United States v. Reilly Tar & Chemical Corp.,* 606 F.Supp. 412 (D.Minn.1985).

■ In view of the overwhelming weight of authority that supports the position advanced by the United States, the Court is compelled to deny Juniper's Motion for Joinder and, thus need not address the remaining and less persuasive argument that the EPA is not a necessary party. Although the Court can share the intense frustration of the plaintiff with respect to its inability to establish any type of dialogue with the EPA that would assist it in its suit against the Trustee, equitable considerations cannot take precedence over what are essentially clear answers to simply legal issues.

In view of the foregoing, the memoranda and arguments of counsel, whether or not specifically mentioned herein, the Court hereby denies the plaintiff's Motion for Joinder.