**In re Edwin Paul WILSON, Debtor,**

**General Richard V. Secord, Intervenor.**

**Bankruptcy No. 84–01415–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 6, 1989.

See also, Bkrtcy., 90 B.R. 208.

Stephen E. Leach, Counsel for John W. Guinee, Trustee, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., and Daniel S. Alcorn, Bernard Fen-

sterwald, Jr., Bernard Fensterwald, III, Fensterwald, Alcorn & Vangellow, Arlington, Va., and Paul Blumenthal, Blumenthal, Carpenter & Berkowitz, Washington, D.C., for debtor.

Thomas C. Green, Sharp, Green & Lankford, Washington, D.C., for Richard V. Secord, intervenor.

Jack McKay, Shaw, Pittman, Potts & Trowbridge, McLean, Va., for Thomas C. Shakley.

Richard Lepley, U.S. Dept. of Justice, Civil Div., Washington, D.C., for the U.S.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

We are here on the application of the Chapter 11 debtor, Edwin P. Wilson, to have the trustee abandon a proposed cause of action against seven individuals, pursuant to Bankruptcy Code Section 554. One of the defendants named in the proposed complaint, General Richard V. Secord, has filed a motion to intervene and opposes the requested abandonment by claiming that the suit is barred by all relevant statutes of limitation. Another of the proposed defendants, Thomas C. Shackley, opposes the debtor's application on the basis that the allegations in the proposed complaint are groundless, thereby prompting needless expense and litigation. Lastly, the United States, through the Attorney General, has filed a Suggestion of Immunity on behalf of two other defendants, arguing that the abandonment of the proposed complaint would conflict with the foreign policy interests of the United States, in view of the individuals' status as officials of a foreign country.

In response to the debtor's application, the trustee has indicated that he has no objection to the entry of an order providing for the estate's abandonment of the proposed claims so long as the order provides that:

(a) The estate will receive a reasonable portion of any profits or other funds collected by the debtor as a result of his pursuit of the claims to be abandoned;

(b) The estate need not provide any fund, resources or assistance to the debtor in the pursuit of the claims other than the sharing of such information as the estate may have concerning the proposed defendants; and that

(c) The debtor must not name the estate as a party to any action or proceeding brought to pursue the claims.

At the hearing held on the debtor's application, counsel for the trustee added that the procedure agreed to was that the estate would receive 35 percent of the net recovery from the debtor's litigation, in the event that there was a recovery.

We address first the Secord motion to intervene. Bankruptcy Rule of Procedure 2018(a) provides that in a case under the Code, a court may grant permissive intervention for "cause shown". Bankr.R.P. 2018(a). An entity seeking intervention may establish just cause by demonstrating an economic or similar interest in the matter pending. *See In re Public Service Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr.D.N.H.1988) (*citing* 8 *Collier on Bankruptcy*, ¶ 2018.03[3] at 2018–7 (15th ed. 1988)).

In the case at bar, Secord grounds his motion to intervene on the basis that he is a named defendant in the proposed civil complaint. As a party to that cause of action, we note that Secord certainly has an interest in this Court's consideration of the debtor's application for abandonment. We note further that in view of the differing arguments advanced on behalf of the proposed defendants, this interest is not represented adequately by any other party responding to the application. Finally, we note that the debtor opposed the motion to intervene only on the basis that the movant "[h]ad not raised issues that would prevent this Court from [entering the order of abandonment]", and failed to address the adequacy of the movant's interest. Accordingly, we find that the movant has established sufficient cause, which remained unchallenged by the debtor's re-

sponse, and, therefore, grant the motion to intervene.

Next, we turn to the application for abandonment. Prior to a consideration of the merits, we review briefly the guidelines applicable to the abandonment of estate property. Under § 541(a) of the Bankruptcy Code ("the Code"), the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests" of the debtor. 11 U.S.C. § 541(a)(1). The scope of section 541 is broad and includes intangible property such as a cause of action. Historical and Revision Notes to § 541; Notes of the Committee on the Judiciary, Senate Report No. 95–989; *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed. 2d 515 (1983). ˚If a trustee is appointed to oversee the debtor's estate, the trustee succeeds to the interests which the debtor had at the time of his filing. 11 U.S.C. §§ 541, 542. It is well settled, however, that a trustee is not obligated to accept onerous or unprofitable property surrendered as part of the estate, *Stanolind Oil & Gas Co. v. Logan*, 92 F.2d 28, 31 (5th Cir.), *cert. denied*, 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592 (1938)[1], and may abandon property that is "burdensome" or "of inconsequential value and benefit" under § 554 of the Code.[2] *See In re Smith–Douglass, Inc.*, 856 F.2d 12, 15 (4th Cir.1988).

▇▇▇ In fulfillment of his role as a representative of the estate and its creditors, the trustee determines whether to maintain or abandon estate property. *In re Rea Express, Inc.*, 9 B.R. 896, 897 (Bankr.S.D. N.Y.1981); *see In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 n. 9 (6th Cir.1987); *McNellis v. Raymond*, 304 F.Supp. 1172, 1174 (N.D.N.Y.1969); *In re Preston*, 82 B.R. 28, 30 (Bankr.W.D.Va.1987). If a timely objection to the trustee's application is filed, or, as in this case, a party in interest has requested the trustee to abandon certain property, court approval is required. 11 U.S.C. § 554(a), (b); Bankr.R.P. 6007; *see Preston*, 82 B.R. at 30. Upon abandonment, the property reverts to the party with the possessory interest. Historical and Revision Notes to § 554, Notes of the Committee on the Judiciary, Senate Report No. 95–989; *see Ohio v. Kovacs*, 469 U.S. 274, 284 n. 12, 105 S.Ct. 705, 710 n. 12, 83 L.Ed.2d 649 (1985).

▇▇▇ In keeping with the goal of the bankruptcy reform movement to divorce courts from ministerial duties, a trustee's disposition of estate property is reviewable only for the purpose of determining whether the decision was made in an arbitrary or capricious manner. *In re Curlew Value Assoc.*, 14 B.R. 506, 511, 513 (Bankr.D.Utah 1981); *see* H.R. No. 99–764, 99 Cong., 2d Sess. 15, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5229–30; *see also In re American Energy*, 49 B.R. 420, 421–22 (Bankr.D.N.D.1985) (bankruptcy court will not usurp the administrative obligations of the trustee and will only act when bona fide dispute is before the court). Accordingly, when called upon to review contested applications for abandonment, a court must focus its examination upon the reasons underlying the trustee's determination and affirm a decision which reflects a business judgment "made in good faith, upon a rea-

---

**1.** *See also In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987); *Schmidt v. Esquire, Inc.*, 210 F.2d 908, 913 (7th Cir.1954); *In re Atkinson*, 62 B.R. 678, 679 (Bankr.D.Nev. 1986); *Matter of Eli Witt Co.*, 39 B.R. 984, 987 (Bankr.M.D.Fla.1984); *In re Rea Express, Inc.*, 9 B.R. 896, 897 (Bankr.S.D.N.Y.1981).

**2.** Section 554 of the Bankruptcy Code provides:
§ 554. Abandonment of property of the estate
  (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
  (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
  (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
  (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
11 U.S.C. § 554 (1987).

sonable basis and with the scope of his authority under the Code." *Curlew,* 14 B.R. at 513–14; *see In re Hartley,* 50 B.R. 852, 863–64 (Bankr.N.D.Ohio 1985) (citing *Curlew* ); *In re Afco Enter., Inc.,* 35 B.R. 512, 517 (Bankr.D.Utah 1983) (same); *accord In re Janmar,* 4 B.R. 4, 10 (Bankr.N.D.Ga.1979) (generally unless trustee agrees to abandonment of a particular property of estate, no order of abandonment shall be issued).

With respect to the trustee's authority to dispose of causes of action specifically, the United States Supreme Court has noted in *Meyer v. Fleming* that a trustee is

> in position to take control of the litigation. He may, as indicated in *Johnson v. Collier,* 222 U.S. 538, 540, 32 S.Ct. 104, 105, 56 L.Ed. 306, start a new suit and cause the old one to be abated, or intervene in the old one and obtain such benefits as it affords.... 'If, because of the disproportionate expense, or uncertainty as to the result, the trustee neither sues nor intervenes, there is no reason why the bankrupt himself should not continue the litigation. He has an interest in making the dividend for creditors as large as possible, and in some states the more direct interest of creating a fund which may be set apart to him as an exemption.' "

327 U.S. 161, 165–66, 66 S.Ct. 382, 385, 90 L.Ed. 595 (1946) (footnotes omitted) (*quoting Johnson v. Collier,* 222 U.S. 538, 540, 32 S.Ct. 104, 105, 56 L.Ed. 306 (1912)).

■ In elaborating upon the latitude a trustee enjoys, the *Meyer* Court further observed that

> 'the trustee in bankruptcy is not obliged to maintain or continue every cause of action which the bankrupt may have. He is not bound to accept burdensome property nor unprofitable contracts, nor is he obliged to intervene in any action pending by or against the bankrupt....

The relationship, therefore, between the bankrupt and his trustee is for one and the same purpose—to get out of the bankrupt's property and claims enough money to pay his debts and to relieve the bankrupt, through his discharge, from further responsibility.'

327 U.S. at 166 n. 9, 66 S.Ct. at 385 n. 9 (*quoting Van Der Stegen v. Neuss, Hesslein & Co,* 270 N.Y. 55, 59–60, 200 N.E. 577, 578–79 (1936)).[3] Thus, it appears that the *only* concern of the trustee in determining whether to abandon a claim is whether such action would be in the best interest of the estate. *Rea,* 9 B.R. at 897; *see Hanover Trust Ins. Co. v. Tyco Industries, Inc.,* 500 F.2d 654, 657 (3d Cir.1974) ("In carrying out his statutory duty to maximize the bankrupt's estate, the Trustee may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim or administering the property."); *accord Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting); (obliging the trustee to retain worthless property would thwart the central purpose of bankruptcy liquidation of debtor's estate for benefit of general creditors); 4 *Collier on Bankruptcy* ¶ 554.01 at 554–2—554–3 (15th ed. 1988).

■ Returning to the reasons profferred by the parties in opposition to the application for abandonment, we consider first the contentions of Shackley and Secord, who challenge the viability of the debtor's proposed cause of action on the basis that it is groundless or barred by statutes of limitation. These parties, the proposed defendants, contend that in view of the questionable validity of the debtor's claims, abandonment should be denied to prevent the needless expense of a frivolous law suit. We note, however, that the assertions disputing the debtor's cause of action, if true,

---

**3.** Although *Meyers* was decided under the Bankruptcy Act, decisions under the Code have confirmed its holdings. *See, e.g., In re Jefferson* 59 B.R. 707, 711 (Bankr.S.D.Miss.1986) (bankruptcy trustee not bound to pursue every cause of action); *In re Mid America Broadcasting of Topeka, Inc.,* 45 B.R. 507, 510 (Bankr.D.Kan. 1984) (trustee has broad powers with respect to an action belonging to estate); *accord In re Fluharty,* 7 B.R. 677, 680 (Bankr.N.D.Ohio 1980) ("To justify the incurrence of expense on [the] part of the trustee in pursuing a cause of action, a sufficient prospect of recovery must exist.").

would support a determination that the proposed litigation is of inconsequential value to the estate and, therefore, affirm rather than challenge the trustee's position. Counsel for Secord argues alternatively that the debtor must first prove the validity of his cause of action before the trustee may abandon, but has presented no authority to support this proposition. We conclude that such an inquiry is not relevant to the proceeding at hand and that the objections of Secord and Shackley must be denied.

▮ Responding on behalf of two of the proposed defendants, the United States presents a unique issue. The Government concedes that "in the usual bankruptcy proceeding where, *as here,* available defenses to a prospective suit render claims framed by the suit of inconsequential value to the debtor's estate, it would not be unusual for the debtor's application for abandonment to be granted under the authority of 11 U.S.C. § 554." [4] The Government asserts, however, that this is *not* the usual case because the United States has an important public policy interest in assuring that foreign officials obtain immunity. Accordingly, the Government requests that this Court deny "permission" to file the proposed complaint, unless the two foreign officials are deleted from its caption. To this argument, the debtor replies that immunity is not the issue before this Court and, if it were, the Government has not asserted the defense in good faith.

Contrary to the Government's understanding of this Court's role we do not here grant "permission" to file suit. We are called upon only to review the basis for the trustee's determination in light of the guidelines set forth above. The Government has conceded that under those principles abandonment would be warranted in view of the inconsequential value of the claims. We note further that while the Government asserts that "immunities for heads of state, ... ministers and diplomats are available to protect [foreign officials]

from a court's jurisdiction", jurisdiction has not been asserted over the parties in opposition to abandonment; they are not defendants before this Court. We are unable, therefore, to act upon the Government's request that we delete the two foreign officials from the proposed complaint, just as we must decline to pass on the merits of the debtor's assertions that the Government's claims of diplomatic immunity are unfounded.

We are indeed sensitive to the Government's obligation to protect the officials in question, but note that the actions of this Court will in no way prevent the United States from filing a suggestion of immunity in any forum, in any suit to which these officials are called upon to respond. Likewise, any challenges to the merits of the debtor's claims or assertions regarding statutes of limitation that may have expired may be pleaded in whatever forum the debtor might file his suit. While the Government portends that the injury to foreign policy will occur upon the filing of the complaint in the appropriate forum, we point out that if this Court denied the request for abandonment, it could do so only on the basis that maintenance of the debtor's cause of action was in the best interests of the estate. The trustee would then be free to file the complaint here, thus thwarting the Government's attempt to prevent the harm that it has alleged will occur. *See Mitchell Excavators by Mitchell v. Mitchell,* 734 F.2d 129, 134 (2d Cir. 1984) (identifying trustee's options as being either to bring suit or abandon claim) (dictum).

Even assuming that this Court were able to entertain the Government's objection, it does not withstand scrutiny. As authority for the proposition that the Court may withhold the abandonment of estate property when abandonment is contrary to the public interest, the Government cites *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).[5] In *Midlantic,*

---

**4.** Suggestion of Immunity by the United States in Response to Debtor Application for Trustee to

Abandon Claims to Debtor's Benefit. Filed August 5, 1987 (emphasis supplied).

**5.** In *Midlantic,* Quanta Resources Corporation

the Supreme Court addressed the issue of "whether § 554 of the Code authorized a trustee in bankruptcy to abandon property in contravention to state laws and regulations designed to protect the public's health and safety." *Id.* 106 S.Ct. at 757. The *Midlantic* court began its analysis with the observation that "[b]efore the 1978 revisions of the Bankruptcy Code, the trustee's abandonment power had been limited by a judicially developed doctrine intended to protect legitimate state or federal interests." 106 S.Ct. at 759; *see Ottenheimer v. Whitaker*, 198 F.2d 289, 290 (4th Cir. 1952) (bankruptcy court required trustee to remove barges from navigable channels at the expense of estate; obstruction of the passage constituted a violation of federal law); *In re Chicago Rapid Transit Co.,* 129 F.2d 1, 5 (7th Cir.), *cert. denied,* 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942), (affirming order of district court directing trustee to continue its operation of a branch railway line to comply with state law); *In re Lewis Jones, Inc.,* 1 Bankr.Ct. Dec. (CRR) 277, 280 (Bankr.E.D.Pa.1974) (bankruptcy court required trustee to expend funds to seal underground steam lines prior to abandonment to protect public interest.) The Court then presumed that when Congress enacted § 554, it had by its silence confirmed that established exception to the trustee's abandonment power. *See* 106 S.Ct. at 759–60. The *Midlantic* Court held, therefore, that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health

or safety from identified hazards." *Id.* at 759. In a footnote, the Supreme Court expressly noted that

[t]his exception to the abandonment power vested in the trustee by § 554 was a narrow one. It did not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the *public health or safety from imminent and identifiable harm.*

*Id.* at 762 n. 9 (emphasis supplied).

We note at the outset that the Government's public policy argument based on *Midlantic* is engaging in view of the Supreme Court's finding that a trustee's abandonment power historically has been limited by state and federal concerns. *See id.* at 759. The sole issue addressed in *Midlantic*, however, was the disposition of tangible property which threatened physical harm, a situation clearly not before the Court here. We find that the parameters of the Supreme Court's ruling are clear and that no court since *Midlantic,* including the Fourth Circuit, has gone beyond the Court's limited holding to protect a public policy interest similar to that which the Government describes here. *See In re Smith–Douglass,* 856 F.2d 12, 15 (4th Cir. 1988) (interpreting *Midlantic* as creating a limited exception to trustee's abandonment power under § 554 in those cases where abandonment would contravene state laws reasonably designed to protect public from

processed waste oil at facilities in New York and New Jersey. *Id.* 106 S.Ct. at 757. In June 1981, the New Jersey Department of Environmental Protection (NJDEP) discovered that the debtor had violated its permit by accepting more than 400,000 gallons of oil contaminated with a highly toxic carcinogen. *Id.* Quanta began negotiations with NJDEP over the clean up of that site. *Id.* Prior to the conclusion of the negotiations, Quanta filed a petition for reorganization which soon was converted to a liquidation proceeding under chapter 7. A trustee was appointed who subsequently oversaw the abandonment of both facilities. *Id.*

The trustee gave notice of his intent to abandon both properties, and officials from the respective states objected in separate actions. *See id.* at 758. The bankruptcy court approved the

trustee's decision to abandon the New York facility, and the district court affirmed. The bankruptcy court then approved the abandonment of the New Jersey facility. *Id.* Because the abandonment of the two facilities presented identical issues, the parties consented to a direct appeal from the bankruptcy court to the Court of Appeals for the Third Circuit. *Id.* at 759. In separate decisions, the Third Circuit concluded that Congress did not intend § 554, or the bankruptcy scheme generally to abrogate relevant state laws. *See Matter of Quanta Resources Corp.,* 739 F.2d 912, 918 (3d Cir.1984); *In re Quanta Resources Corp.,* 739 F.2d 927, 928 (3d Cir.1984). The Supreme Court granted *certiorari* to these cases to determine whether the Court of Appeals properly construed § 554 of the Code. 106 S.Ct. at 757.

imminent harm); *Matter of Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1182 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) (same); *In re Security Gas & Oil, Inc.*, 70 B.R. '786, 794 (Bankr.N.D.Calif.1987) (same); *In re Stevens*, 68 B.R. 774, 778 (D.D.Me.1987) (same); *In re Franklin Signal Corp.*, 65 B.R. 268, 271 (Bankr.D.Minn. 1986) (same); *United States v. F.E. Gregory & Sons, Inc.*, 58 B.R. 590, 592 (D.W.D. Pa.1986) (same); *In re Commercial Oil Service, Inc.*, 58 B.R. 311, 316 (Bankr.N.D. Ohio 1986) (same).

It appears that the trustee here, while taking no position on the exact value of this cause of action, has made a determination that it would be in the best interests of the estate to consent to its abandonment, upon the condition that the estate would incur no cost but would receive 35% of the net profit from the debtor's prosecution of the claims himself. That decision is based upon the trustee's business judgment and, therefore, entitled to an affirmance by this Court unless the evidence presented indicates that there is a value or benefit to the estate from maintaining the claims, over and above that which would be obtained from the consent arrangement. *See In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987) (abandonment not proper where benefit of administering asset exceeds cost). The Government instead admitted the questionable worth of these claims, conceded that abandonment would not be improper in the usual case, and has failed to persuade this Court that it should set aside a decision of the trustee which maximizes the value of the estate for the benefit of its creditors in this instance. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1992, 85 L.Ed.2d 372 (1985) (trustee has duty to maximize value of estate).

In *In re Hemingway Transport, Inc.*, the plaintiff was a creditor who sought to join the United States Environmental Protection Agency (EPA) as a necessary party to litigation commenced against the debtor and trustee. 70 B.R. 549, 550 (Bankr.D. Mass.1987). The plaintiff argued in part that public policy considerations compelled joinder of the EPA, citing the Supreme Court's decision in *Midlantic*. *Id.* at 552. The United States objected to the plaintiff's motion on the basis that joinder of the EPA was barred by the doctrine of sovereign immunity. *Id.* at 551.

The *Hemingway* court expressly declined to interpret *Midlantic* to the broad extent urged by the creditor and held that although the Supreme Court evidenced a strong concern for public health and safety, *Midlantic* did "not address, let alone abrogate, the doctrine of sovereign immunity." *Id.* at 553. In so concluding, the *Hemingway* court made its determination upon consideration of the doctrine of sovereign immunity itself, as a defense pled before the court in which the suit was filed, and would not acknowledge the public policy concerns the creditor had extrapolated from the Supreme Court's decision. It will be necessary for the Government to plead its defenses similarly before the court in which the proposed complaint is filed, on behalf of the named defendants therein.

After careful consideration and for the reasons set forth above, we conclude that the trustee has not acted in an arbitrary or capricious manner in conditionally consenting to the debtor's application and, therefore, we must deny the objections to the abandonment of the proposed cause of action. Accordingly, the debtor's application for abandonment of claims, upon the incorporation of the trustee's conditions, is granted.

An appropriate order shall enter.