397 A.2d 980 (1979)
PEGGY S. M., On behalf of her minor child, John Boy M.
v.
STATE of Maine and David Smith.
Supreme Judicial Court of Maine.
January 29, 1979.
Pine Tree Legal Assistance, Inc., Thomas B. Benjamin, Lewiston (orally), Bruce R. Merrell, Bangor, for plaintiff.
William C. Nugent (orally), Raymond E. Ritchie, Asst. Attys. Gen., Dept. of Human Services, Augusta, for defendant.
Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.
POMEROY, Justice.
Less than two years after his birth, "John Boy" is found in the center of a controversy involving the United States Department of Health, Education and Welfare, the Department of Human Services of the State of Maine, its Commissioner, and the Superior Court of the State of Maine.
At issue is the question: in the circumstances here presented must "John Boy" be deprived of benefits under Aid to Families with Dependent Children because his mother "failed to cooperate with the child support agency" by refusing to reveal the name of "John Boy's" putative father to the Department of Human Services?
The one thing about which there can be no disagreement is that no fault of "John Boy" created the controversy.
The controversy comes to us by way of an appeal from a decision in the Superior Court. That Court had occasion to hear and decide the controversy by reason of an appeal instituted pursuant to Rule 80(B), M.R.Civ.P., by which a decision of the Maine Department of Human Services was challenged. The Department denied payments under the Aid to Families with Dependent Children Program (AFDC) to "John Boy", son of Peggy S. M. The Superior Court upheld the Department's ruling and this appeal was taken.
We sustain the appeal, and remand to the Superior Court for further proceedings.
"John Boy" was born out of wedlock on November 15, 1975. Both he and his mother Peggy S. M. ("Peggy") received AFDC benefits until they were terminated in February, 1977, by the Department of Human Services when Peggy refused to identify "John Boy's" father. On June 28, 1976, Peggy reapplied for AFDC benefits, not on her own behalf but, in accordance with 42 U.S.C. § 602(a)(26) (Supp.1978) on behalf of her son, with the request that the benefits be made in the form of "protective payments" to the boy's grandmother.
At the time of this application, the infant "John Boy" had no income of his own. Peggy's net monthly income from a summer *981 and part-time school year job as a waitress was, according to department records, $147.89. According to her testimony, her personal living expenses for basic necessities were at least $182.00 per month, leaving her consistently indebted to various creditors. Although "John Boy" was in all other respects eligible for AFDC benefits, the Department denied his application. The worker who made this decision gave this rationale:
When asked to sign the support agreement, naming the father of the child, Ms. * * * refused. Therefore, according to our manual, all the income must go to her child and she had an income of $147, which is over our base plan of $64 for one child so therefore she had enough income to meet the needs of her child.
This decision was affirmed by the Department's Commissioner in a "fair hearing"[1] decision on September 10, 1976, and by a Superior Court decision dated October 5, 1977.
It is undisputed that, were it not for Peggy's refusal to name her son's father, "John Boy" (and Peggy) would be eligible for AFDC benefits.[2] By their interpretation of applicable regulations, however, the Department has determined that all of Peggy's net income is actually available, dollar for dollar, for "John Boy's" support, rendering him ineligible for the benefit of a grant.[3]
Appellant attacks the action of the Department as violative of the plain meaning of applicable federal statutes and regulations, as well as of the Due Process Clause of the Fourteenth Amendment. It is further contended that, assuming such statutes and regulations to be ambiguous, no express or clearly implied legislative intention to exclude "John Boy" from the benefit of AFDC coverage in such circumstances can be found.
The federal AFDC program, found in sections 601 to 644 of the Social Security Act of 1935, as amended, 42 U.S.C. §§ 601-644 (1974), provides financial aid to states on a matching fund basis to assist the "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent. . .." 42 U.S.C. § 606(a) (1974). Each state wishing to qualify for sums appropriated by Congress must submit a plan for "aid and services to needy families with children." 42 U.S.C. § 601 (1974). The plan must contain each provision on the list set forth in § 602(a) of the Social Security Act and must be approved by the Secretary of Health, Education and Welfare. 42 U.S.C. § 602(b) (1974). Among the requirements found in § 602(a) is that the state plan furnish aid "with reasonable promptness to all eligible individuals," 42 U.S.C. § 602(a)(7) (1974). Maine has submitted such a plan and from time to time has amended it; the plan and amendments have been approved by the Secretary.
The Department premises its denial of the application for "John Boy's" benefit on the following state regulation:
FAILURE TO COMPLY WITH CHILD SUPPORT PROVISIONS

If the relative with whom a child is living refuses to assign rights to support *982 or to cooperate in securing support payments such relative shall be denied assistance and his needs removed from the assistance plan.

However, eligibility of assistance for the child or children shall not be denied if otherwise eligible. Need will be determined without including the needs of a caretaker relative. In addition any payment will be made in the form of a protective payment to a third party status, only upon compliance by caretaker relative with eligibility requirements.
When the relative is a parent of the child(ren) his or her income and resources will be considered in determining eligibility of the children even though his or her needs are removed from the assistance plan. Me.Pub.Assist.Pay.Manual, Ch. II, § A, p. 10.
The Department has interpreted the last paragraph of this regulation to mean that, regardless of the parent's needs and necessities, all of the parent's net income is conclusively presumed available to the child.
Paralleling this state regulation is 45 CFR § 232.12(e), a federal Department of Health, Education and Welfare regulation promulgated in 1976 in response to the enactment of the Child Support Enforcement Program:[4]
§ 232.12(e) Cooperation in obtaining support

The State plan must provide that . . (e) if the relative with whom a child is living is found to be ineligible for assistance because of failure to comply with the requirements of paragraph (a) of this section, any aid for which such child is eligible (determined without regard to the needs of the caretaker relative) will be provided in the form of protective payments as described in § 234.60 of this chapter.[5] (Emphasis added).
The present dispute centers around construction of the parenthetical phrase "determined without regard to the needs of the caretaker relative." Appellant argues that the phrase means simply that the non-cooperative relative should be excluded from the AFDC grant; appellees contend that preceding sections of the regulation[6] adequately establish cooperation as a precondition to eligibility, and that appellant's construction would render subsection (e) redundant. Rather, appellees say, the regulation requires that the parent's needs not be considered in any manner in the calculation of the grant, including that part of the calculation wherein the relative's income is attributed to the child.
A careful review of the applicable statutes, regulations, and decisions convinces us that the case worker, the Commissioner and the Superior Court are in error. As the United States Supreme Court has noted:

[I]n the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.[7]
To argue, as the Department does here, that it is only the noncooperating mother who is penalized and not the child is unrealistic. The distinction has been consistently rejected by the courts.[8] Indeed, the House Report (No. 1300) with respect to the 1950 amendment of 42 U.S.C. § 606(b) (70 Stat. 850) recognized this interdependency:

Since the person caring for the child must have food, clothing, and other essentials, *983 amounts allotted to the children must be used in part for this purpose if no other provision is made to meet her needs.

What may not be done directly may not be done indirectly.
Plans which effectively terminate aid to children as a result of the conduct of their parents bear a heavy burden of justification. Norton v. Levine, 74 Misc.2d 590, 344 N.Y.S.2d 81 (1973). Recognizing that some ambiguity is created by the language of 45 CFR § 232.12, we do not believe it is such as to create an "exclusion clearly evidenced", Townsend v. Swank, supra, justifying the Department's challenged practice, particularly in light of other HEW regulations and federal statutes.
One such regulation appears at 45 CFR § 233.20(a)(3)(vi), which provides that a state AFDC plan must:
. . . if the State agency holds relatives responsible for the support of applicants and recipients, (a) include an income scale for use in determining whether responsible relatives have sufficient income to warrant expectation that they can contribute to the support of applicants or recipients, which income scale exceeds a minimum level of adequacy that takes account of the needs and obligations of the relatives.

We are not convinced that in promulgating 45 CFR § 232.12(e), HEW intended this cautious analysis to be thrown to the winds in the case of an uncooperative parent, to be replaced by a rigid and wholly unrealistic assessment of resources. The inevitable result of such reasoning would be the deprivation of the very class the program is designed to aid.
Other statutes and regulations expressly forbid consideration of any income other than that which is actually and regularly received by the applicant. See, e. g., 45 C.F.R. § 233.20(a), (a)(3)(ii)(D) & (E); 45 CFR § 233.90(a). As the United States Court of Appeals, Second Circuit has noted, "[u]nder the long-standing administrative interpretation of section 402(a)(7) of the Social Security Act, only real sources of income may be considered by the state in determining need." Taylor v. Lavine, 497 F.2d 1208, 1215 (2d Cir. 1974).[9]
Additionally, we note a consistent theme woven throughout the applicable statutes and regulations is that prohibiting punishment of children for the errors of their parents. We cannot imagine a clearer mandate than is contained in 45 CFR § 233.90(b)(4)(i):
(4)(i) a child may not be denied AFDC either initially or subsequently because a parent or other caretaker relative fails to cooperate with the child support agency in performing any of the activities needed to:
(A) Establish the paternity of a child born out of wedlock; or
(B) Obtain support from a person having legal duty to support the child.
See also, 42 U.S.C. § 606(f) (Supp.1978).[10]
All of these citations and principles militate against upholding the Department's interpretation of 42 CFR § 232.12(e) and its reformulation in the Manual.
The word "needs" is used throughout the federal regulations as a term of art clearly referring to the amount of assistance to which an eligible applicant would be entitled under AFDC. See 42 U.S.C. § 606(b); 45 CFR § 232.10(f). With the exception of the challenged provision, Maine also uses *984 "needs" to refer to the grant budget toward which payment may be made. See, e. g., Me.Pub.Assist.Pay.Man., Ch. II, § D, p. 6, ¶ 8: "The needs of the stepparent will never be included in an assistance plan for children receiving AFDC." This authorizes only the exclusion of the stepparent from the grant budget; it does not allow a conclusion that the stepparent has no needs. Read consistently with other regulations, § 232.12(e) or, as amended, (d), means only that the grant will not extend to an ineligible applicant.
Finally, we note that in August, 1977, the Department revised its Manual with respect to the treatment of stepparents, whom Maine law does not obligate to support their stepchildren. The revised regulation states that:

When the legal parent in the home is excluded from the AFDC assistance plan that portion of his or her available income (after appropriate exclusions, work-related expenses, and disregards) which exceeds the AFDC standard for one adult is considered available for the support of the children for whom AFDC is reguested. Me.Pub.Assist.Pay.Manual, Ch. II, § D, p. 7 (first emphasis added).
We consider this regulation to be in clear conflict with the treatment accorded the application filed on behalf of "John Boy". Moreover, we consider it to be consistent with federal statutes and regulations, unlike the interpretation originally given the Manual section and federal regulation in controversy by the Department.
We, therefore, find the Department's interpretation of Manual Ch. II, § A, p. 10 to be unauthorized by the Social Security Act, its legislative history and purpose, and that the proper method to be applied in computing the grant appears in the Manual at Ch. II, § D, p. 7 (1977).
Application of that method to the instant case is as follows:
Gross monthly income: A
 Less work related expenses: (B)
 Less disregard: (C)
 Less Me. AFDC standard for
 one person: (D)
 Sum "considered available"
 for support: E
Maximum grant for one child: F
 Less available support: (E)
 Child's AFDC grant: G
The case is therefore remanded to the Superior Court, with instruction to enter judgment for appellant, and further to order that the Department of Human Services pay to appellant through protective payments the sum, calculated as described herein, wrongfully withheld.
The entry is:
Reversed and remanded to the Superior Court, with instructions as provided herein.
GODFREY, J., did not sit.
NOTES
[1] 42 U.S.C. § 602(a)(4) (Supp.1978).
[2] The Department would compute their grant as follows:

Peggy's gross monthly income $351.21
 Less work incentive disregard 137.07
 Less work related expenses 203.42
 -------
 Adjusted monthly income .......... $ 10.72
Maximum Grant (for parents and one
 child: MPAPM, Ch. II, Sec. D, p. 3) $174.00
 Less adjusted income 10.72
 -------
 Grant ............................ $163.28

[3] The Department computes this grant as follows:

Peggy's monthly net income: $147.89
Peggy's requirements: 000.00
 -------
 "John Boy's" monthly net income $147.89
Maximum grant (for one child: MPAPM,
 Ch. II, Sec. D, p. 3) $ 64.00
 Less adjusted income: 147.89
 -------
 Grant .......................... $000.00

[4] See 42 U.S.C. § 602(a)(26) (Supp.1978), P.L. 93-647, § 101(c)(5)(C) (1975).
[5] The regulation was amended in 1978 and is now § 232.12(d). The parties agree that the change was one of form not affecting this dispute. See also, 45 CFR § 232.11(a)(3) (1976).
[6] See §§ 232.12(a) (cooperation is a condition to eligibility) and (d) (noncooperating relatives "shall be denied eligibility without regard to other eligibility factors.")
[7] Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971).
[8] See cases cited in Shirley v. Lavine, 365 F.Supp. 818 (N.D.N.Y.1973) at 822, n. 7, aff'd. sub nom. Lascaris v. Shirley, 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975).
[9] See also, National Welfare Rights Organization v. Mathews, 174 U.S.App.D.C. 410, 422, 533 F.2d 637, 649 (1976) (". . . the cardinal principle of AFDC is that only resources actually available may be counted in determining whether the recipient is within the state's definition of a standard of need."); Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Johnson v. Harder, 383 F.Supp. 174 (D.Conn. 1974), aff'd per curiam, 512 F.2d 1188 (2d Cir. 1975); National Welfare Rights Organization v. Weinberger, 377 F.Supp. 861 (D.D.C.1974); Riemer v. Hooker, 392 F.Supp. 145 (D.N.H. 1975).
[10] "Nothing in this subsection shall be construed to make an otherwise eligible child ineligible for protective payments because of the failure of such parent (or such other individual) to so cooperate."