**MAINE ASSOCIATION OF INTERDE-
PENDENT NEIGHBORHOODS,
INCORPORATED, Plaintiff,**

**v.**

**Michael PETIT, Commissioner of the
Maine Department of Human Services,
and Otis R. Bowen, Secretary of Health
and Human Services, Defendants.**

**Civ. No. 85–0236–B.**

United States District Court,
D. Maine.

Jan. 16, 1986.

See also, 644 F.Supp. 81.

Jack Comart, Pine Tree Legal Assistance, Inc., Augusta, Me., for plaintiff.

Katherine Greason, Asst. Atty. Gen., Dept. of Human Services, Legal Div.—Station 11, Augusta, Me., for Petit.

Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., and Joyce Elise McCourt, Asst. Regional Atty., Health and Human Services, Boston, Mass., for Heckler.

## ORDER DISMISSING PLAINTIFF'S ACTION FOR LACK OF STANDING

CYR, Chief Judge.

Plaintiff Maine Association of Interdependent Neighborhoods, Inc. [MAIN] sued the Commissioner of the Maine Department of Human Services [Commissioner] and the Secretary of the United States Department of Health and Human Services [Secretary] in state court, seeking review of a regulation governing eligibility for the Aid to Families with Dependent Children program [AFDC], 42 U.S.C. §§ 601–615 (1982), as well as declaratory and injunctive relief. The Secretary removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1).[1] MAIN has moved for summary judgment. The Secretary opposes MAIN's motion on the grounds that MAIN does not have standing to bring this action and that the challenged regulation is a reasonable interpretation of the statute. Because the court finds that MAIN lacks standing to bring this action, the court expresses no opinion on the validity of the challenged regulation.

At issue are the regulations promulgated by the Commissioner and the Secretary to implement section 2626 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 369, 1136 [currently codified at 42 U.S.C.A. § 602(a)(7)(B)(iii) (Supp. 1985–1986)]. Section 2626 amends the statute governing eligibility for AFDC and requires that state agencies administering the AFDC program

> shall determine ineligible for aid any family the combined value of whose resources (reduced by any obligations or debts with respect to such resources) exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this subparagraph
>
> . . . .
>
> (iii) for such period or periods of time as the Secretary may prescribe, real property which the family is making a good-

---

1. Section 1442 provides, in pertinent part, as follows:

   (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

   (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

faith effort to dispose of, but any aid payable to the family for any such period shall be conditioned upon such disposal, and any payments of such aid for that period shall (at the time of the disposal) be considered overpayments to the extent that they would not have been made had the disposal occurred at the beginning of the period for which the payments of such aid were made.

42 U.S.C.A. § 602(a)(7)(B)(iii) (Supp. 1985–1986).[2]

The Secretary contends that MAIN does not have standing to bring this action. MAIN responds that it had standing in state court and that the federal court's jurisdiction is derivative since the action was removed under 28 U.S.C. § 1442(a). Alternatively, MAIN argues that it is an organization entitled to raise a claim on behalf of one or more of its members. The court finds that the former argument is not supportable as a matter of law, and that the latter argument is belied by the pleadings.

■ "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The standing requirement is based on constitutional requirements and prudential considerations. *Id.* As the Supreme Court has noted, although "Congress may grant an express right of action to persons who would other-

wise be barred by prudential standing rules," *id.* at 501, 95 S.Ct. at 2206, the constitutional requirement of a "case or controversy" must always be satisfied before a federal court may exercise its jurisdiction. *Id.* Thus, although removal pursuant to 28 U.S.C. § 1442(a) may expand the jurisdiction of the district court, and arguably "grant an express right of action" to persons who might be barred by *prudential* standing requirements,[3] such removal plainly does not obviate the need for compliance with the constitutional requirements of standing.

The constitutional standing requirement has been characterized as "demanding a 'personal stake' that will make the plaintiff an effective litigant; this quest is pursued by demanding an injury in fact that has been caused by the challenged conduct and that can be remedied by a judicial decree." 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3531, at 347 (2d ed. 1984). Summarizing Supreme Court decisions, the First Circuit stated that "recent cases turn largely on the extent to which it appears that plaintiff is suffering tangible harm traceable to the challenged actions of the defendant—harm which will be lessened if the requested remedy is granted." *NAACP Boston Chapter v. Harris*, 607 F.2d 514 (1st Cir.1979).

■ It is well settled that an organization may have standing to raise a claim of injury to itself, *see, e.g., NAACP v. Alabama*, 357 U.S. 449, 458–60, 78 S.Ct. 1163,

---

**2.** Plaintiff challenges both the federal regulation, codified at 45 C.F.R. § 233.20(a)(3)(B)(5), and the state regulation implementing the federal regulation. The regulations govern *when* an AFDC recipient must repay overpayments conditionally made pending the recipient's good-faith effort to dispose of excess real property. The regulation requires that an overpayment be *assessed* at the end of the period allowed for disposal, even if the property has not been sold. The plaintiff contends that an overpayment may be assessed only *after* the excess property is sold, regardless of when that occurs.

**3.** The purpose of § 1442(a)(1), *see* note 1 *supra,* is to "permit a trial upon the merits of the *state-law question* free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (*emphasis added*). Thus, when an action is

removed from state court pursuant to § 1442(a)(1), "the invocation of removal jurisdiction does not revise or alter the underlying law to be applied. In this respect, it is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties." *Id.* Plaintiff thus argues that the court need not inquire into federal standing requirements, so long as standing existed in state court. As noted in the text, however, congressional action cannot alter the constitutional requirement of a "case or controversy." Because plaintiff's complaint does not satisfy the threshold constitutional criteria for standing, the court does not consider the effect of removal under section 1442(a)(1) on any prudential standing limitations. *See Warth*, 422 U.S. at 501, 95 S.Ct. at 2206.

1169–71, 2 L.Ed.2d 1488 (1958), or on behalf of its members, *see, e.g., Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). MAIN argues that it "meets the test of organizational standing articulated by the federal courts." The Supreme Court has prescribed the following criteria for determining organizational standing:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

· The court finds that plaintiff's complaint does not allege that its members would have standing to sue in their own right. The only allegation MAIN makes regarding its members is that:

> The Maine Association of Interdependent Neighborhoods is a nonprofit corporation organized under Title 13B, M.R.S.A.; it is comprised of eight affiliated groups with a total of over 1000 members. Many of those members are recipients of AFDC and will therefore be adversely affected by the actions of the Defendants.

Complaint, ¶ 2. It simply does not follow that because members receive AFDC, they will be affected by the challenged regulation. *See* note 2, *supra.* As the challenged regulation governs *eligibility* for AFDC, it is only applicants and recipients of conditional AFDC benefits that *could* be adversely affected. Furthermore, plaintiff challenges one narrow aspect of the Secretary's regulation—when an overpayment may be assessed *if* excess real property is not sold within the nine month grace period allowed by the state. Thus, it is only applicants who are awarded and who accept AFDC benefits conditioned upon the sale of excess real property, *and* who do not sell that property within the grace period, who will be adversely affected by the challenged regulation. Even construed liberally, MAIN's broad assertion falls far short of the allegations necessary for the court to determine that plaintiff's members would have standing to challenge this regulation in their own right. MAIN fails to allege that any of its members are subject to the regulation, or even that any of its members own real property, much less demonstrate that they will be adversely affected by the regulation. Indeed, read literally the complaint states that MAIN's members are *recipients* of AFDC, the one group that would *not* be adversely affected by the challenged eligibility regulation.

Also, the allegation in the complaint establishes that MAIN differs from other organizations that have been granted standing to sue on behalf of their members. The members of MAIN are *not* individual recipients of welfare benefits, but are "eight affiliated groups." Thus MAIN apparently is not seeking to raise a claim on behalf of its members, but rather on behalf of members of its members. Although this distinction is not necessarily dispositive of an organization's claim of standing, the failure of MAIN to recognize it or plead other facts highlights MAIN's failure to satisfy the requisites of *Hunt* in this action. Although the Secretary challenged plaintiff's standing in his memorandum opposing summary judgment, plaintiff did not seek to amend its complaint, nor did plaintiff submit any affidavits of fact in support of its standing to bring this action. *See Warth,* 422 U.S. at 501, 95 S.Ct. at 2206.

Plaintiff fails to satisfy the first requirement of *Hunt* for yet another reason. MAIN's members would be entitled to sue in their own right only if their claims are presently ripe for adjudication. The doctrine of ripeness has developed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt *in a concrete way* by the challenging parties." *Abbott Labora-*

 

*tories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

*Abbott,* the watershed Supreme Court decision on the question of ripeness, states that "[t]he problem is best seen in a two-fold respect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. Plaintiff has not alleged, and the court cannot discern, any hardship to the parties as a result of withholding court consideration. *Cf. Abbott, supra* [parties challenging regulation prior to enforcement faced a choice of complying with regulation, which would be extremely expensive, or violating the regulation, which carried civil and criminal penalties. The hardship imposed by either option justified pre-enforcement judicial review]. In the absence of any allegation or showing of hardship, plaintiff is essentially seeking to engage in an "abstract disagreement" with the Secretary as to the validity of a regulation. The court declines to review the Secretary's regulation until its effects have been felt in a concrete way by the parties.

As plaintiff has not satisfied the requirement of demonstrating a "case or controversy" cognizable under accepted judicial doctrine governing standing, it follows that the court does not have jurisdiction over the subject matter of plaintiff's claim. *See Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2204–05. Therefore, defendant's motion to dismiss is GRANTED. Fed.R.Civ.P. 12(b)(1).

SO ORDERED.