**MAINE ASSOCIATION OF INDEPEN- DENT NEIGHBORHOODS (M.A.I.N.), Plaintiff,**

v.

**COMMISSIONER, MAINE DEPART- MENT OF HUMAN SERVICES, Defendant and Third–Party Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Third–Party Defendant.**

**Civ. No. 86–0327–B.**

United States District Court, D. Maine.

Aug. 30, 1988.

James R. Cortteau, Pine Tree Legal Assistance, Inc., Bangor, Me., Joyce Mykleby, Machias, Me., for plaintiff.

Marina E. Thibeau, Asst. Atty. Gen., Dept. of Human Services, Augusta, Me., for defendant and third-party plaintiff.

Thomas L. Goodwin, Asst. U.S. Atty., Bangor, Me., Joyce Elise McCourt, Asst. Regional Counsel, Boston, Mass., for third-party defendant.

## MEMORANDUM DECISION AND ORDER

CYR, Chief Judge.

### I. BACKGROUND

Plaintiff Maine Association of Independent Neighborhoods, Inc (MAIN) is a nonprofit corporation composed of eight affiliated groups representing more than 1,200 members. Complaint, at 3. Its complaint challenges the legality of three changes effected by regulations recently promulgated by Department of Human Services (DHS) Commissioner Petit (Commissioner) concerning the Aid to Families with Dependent Children (AFDC) program. *See* Me.Rev.Stat.Ann. tit. 22, §§ 3741 *et seq.* (1980); 42 U.S.C. § 601 *et seq.*

First, MAIN alleges that the regulations are infirm for failure to consider a "sanctioned" caretaker's [1] needs before deeming the caretaker's income available to the foster child. Complaint, at 10–11. Under previous regulations, children's benefits were calculated by attributing income to a child only after deducting such amounts as were required to meet the needs of the "sanctioned" caretaker. Complaint, at 5–9; Answer, at 5–9.

Second, MAIN challenges the Commissioner's disallowance of certain deductions from the earned income of "sanctioned" caretakers. Complaint, at 12.

Finally, MAIN contests the Commissioner's treatment of windfall payments—e.g., gifts, inheritances, settlements of damages claims—as "lump sum income," rather than as "resources." Complaint, at 13–16. Treatment as "lump sum income" generally results in disqualification from AFDC for a fixed period, whereas "resource" treatment permits immediate requalification for AFDC as soon as the resource has been "spent down." Complaint, at 15; Answer, at 15.

Plaintiff MAIN challenges each of these regulations on two grounds. First, plaintiff asserts that the failure of the regula-

---

1. A caretaker is said to have been "sanctioned" when the caretaker has failed to comply with DHS regulations.

tions to provide deductions for work-related expenses of sanctioned caretakers is arbitrary and capricious, and contrary to Maine law as stated in *Peggy S.M. v. State*, 397 A.2d 980, 984 (Me.1979). Complaint, at 22–23. Second, plaintiff claims that the Commissioner changed the regulations for the treatment of windfall payments based on an erroneous interpretation of federal statutory requirements. Complaint, at 31.

The complaint for declaratory and injunctive relief was filed in Maine Superior Court on October 7, 1986. The action was removed on November 10, 1986, by the defendant Commissioner, pursuant to title 28 United States Code, section 1441(a). The Commissioner then filed a third-party complaint for declaratory relief against the United States Secretary of Health and Human Services (Secretary). The Commissioner demands indemnification by the Secretary for any liability imposed on the Commissioner. *Id.*

Plaintiff moves for remand, *see* 28 U.S.C. § 1447(c), on the ground that the case was removed "improvidently and without jurisdiction" inasmuch as (1) the eleventh amendment bars consideration of plaintiff's claims in federal court; and (2) the court lacks subject matter jurisdiction of plaintiff's first cause of action since it does not arise under federal law. Plaintiff's Motion for Remand, July 18, 1987.

The Commissioner moves to dismiss for lack of standing by plaintiff MAIN. Defendant Commissioner's Motion to Dismiss, July 1, 1987.

The Secretary joins the Commissioner in opposition to remand and in requesting dismissal of the action for lack of standing. Memorandum of Secretary Bowen's Motion to Dismiss or In the Alternative For Summary Judgment, and In Opposition To Remand, August 3, 1987 [Memorandum of Secretary Bowen].

The recommended decision of the United States Magistrate concludes that (1) the suit is not barred by the eleventh amendment, Recommended Decision, at 47; and (2) the action presents a substantial federal

question necessary to the resolution of the case. *Id.* at 7–9. The Magistrate recommended denial of the motion for remand, but concluded that MAIN lacks standing, *id.* at 13, and that the action should be dismissed, *id.* at 13. Plaintiff objects to the Magistrate's recommended disposition. Plaintiff's Objections To Magistrate's Recommended Decision, April 14, 1988.

## II. DISCUSSION

Although plaintiff does not object to the recommended denial of the motion for remand, the court undertakes discretionary review *sua sponte*. *See United States v. Flaherty*, 668 F.2d 566, 585–586 (1st Cir. 1981) (non-self-operating magistrate's order is reviewable even though no party files timely objections).

### Federal Question Jurisdiction

██ The Magistrate characterized plaintiff's claims as state law claims which implicate federal question jurisdiction inasmuch as they involve a substantial issue of federal law as a necessary element. Recommended Decision, at 8. The Magistrate reasoned that "a determination of entitlement to benefits pursuant to the requirements of the Social Security Act is necessarily implicated by the plaintiff's pleadings." *Id.* at 9. Since a question of federal law is a necessary element of plaintiff's state law claim, the Magistrate concluded that the claims arise under federal law. *Id.*

The Magistrate is correct. *See Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983) (original federal jurisdiction available even if state law creates cause of action, provided substantial issue of federal law is necessary element of state law claim).

### Eleventh Amendment

██ The Magistrate concluded that plaintiff's claims come within the *Ex Parte Young* exception to the eleventh amendment, *see Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), because plaintiff requests prospective relief[2]

**2.** Plaintiff seeks (1) a judicial declaration that    the challenged regulations are contrary to law,

against a state official who is alleged to have acted beyond his statutory authority. Recommended Decision, at 5–6.

Plaintiff characterizes its first claim for relief as a claim that state officials are violating *state law* in carrying out their official duties. Memorandum In Support of Motion For Remand, at 10.[3] Such a claim is barred by the eleventh amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). The fact is, however, that the procedural predicate upon which plaintiff brought suit in state court is founded on state law; specifically, the Maine Administrative Procedures Act, Me.Rev.Stat.Ann. tit. 5, § 8058(1) (1980), whereas the substantive law allegedly violated by the Commissioner is federal.

MAIN asserts that the challenged state regulations contravene the rule enunciated by the Maine Supreme Judicial Court in *Peggy S.M. v. State,* 397 A.2d 980, 984 (Me.1979) (attribution of income of sanctioned caretaker to child, without first taking into account financial needs of caretaker, is contrary to federal law). In *Peggy,* the interpretation of its own regulations by DHS was found contrary to the Social Security Act. *Id.* Since MAIN seeks prospective relief against a state official acting in his official capacity, and in *conformity* with federal law, the Magistrate correctly concluded that *Ex Parte Young* excepts the claim from the eleventh amendment.

The Magistrate's recommended disposition of the eleventh amendment issue is sustainable also because the Maine Attorney General, by removing the action to federal court, and thereafter filing a third-party complaint, has waived the state's eleventh amendment immunity. *Maine Association of Interdependent Neighborhoods v. Petit,* 659 F.Supp. 1309, 1315 (D.Me.1987) (*Petit* I). *See Newfield House Inc. v. Massachusetts Department of Public Welfare,* 651 F.2d 32, 36 n. 3 (1st Cir.), *cert. denied,* 454 U.S. 1114, 102 S.Ct. 690, 70 L.Ed.2d 653 (1981) (Massachusetts Attorney General has power to waive state's eleventh amendment immunity and did so by seeking removal, by opposing plaintiff's argument that the eleventh amendment did not apply, and by pressing a counterclaim in the federal action). *Petit* I held that the Maine Attorney General has the power to waive Maine's eleventh amendment immunity. 659 F.Supp. at 1315–1316. The Maine Attorney General was found to have waived eleventh amendment immunity in *Petit* I by removing the case to federal court and by filing a third-party complaint. *Id.* at 1316.[4]

## III. MOTIONS TO DISMISS

*MAIN's Standing*

The United States Supreme Court hews to a three-part test of "organizational standing."

[A]n association has standing to sue on behalf of its members "when (a) its mem-

---

(2) an injunction against further enforcement of the regulations, and (3) an order requiring the promulgation of new regulations. Any expenditure of state funds would be ancillary to the grant of prospective relief, within the framework established by the Supreme Court. *See Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974); *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977); *See also Kozera v. Spirito,* 723 F.2d 1003, 1009 (1st Cir.1983) (although declaration that Secretary's regulations violate federal law would likely result in increased outlays by the state, such effect is ancillary and not precluded by the eleventh amendment); *Libby v. Marshall,* 653 F.Supp. 359, 363 (D.Mass.1986).

**3.** Plaintiff's second claim for prospective relief, which is predicated on the ground that the chal-

lenged state regulations *violate federal statutes,* clearly comes within the *Ex Parte Young* exception.

**4.** Plaintiff relies on inapposite caselaw concerned with the standards for *congressional abrogation* of a state's eleventh amendment immunity pursuant to the fourteenth amendment or the spending clause. Plaintiff's Memorandum in Support of Motion For Remand, at 12. Plaintiff also cites caselaw dealing with the Maine Attorney General's power to waive the state's *common law sovereign immunity in state courts,* and a statute (14 M.R.S.A. § 8118) providing that the Maine Tort Claims Act is not to be construed as a waiver of the state's eleventh amendment immunity.

bers would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). *See also Automobile Workers v. Brock*, 477 U.S. 274, 284, 106 S.Ct. 2523, 2530, 91 L.Ed.2d 228 (1986).

MAIN originally asserted standing on the basis of the following allegations of its complaint:

> (1) [MAIN] brings this action on behalf of its members, some of whom are affected by the challenged rules....

> (3) [MAIN] is a nonprofit corporation ..., comprised of eight affiliated groups ... [whose] goals ... include assisting its members and other low income persons to obtain ... the benefits of public assistance programs including AFDC. It has members who are both present and potential recipients of AFDC and would be adversely affected by the rules challenged in this action....

Complaint, ¶¶ 1, 3.

The Magistrate concluded that MAIN lacks standing because it failed to identify the members of its constituent organizations who have been denied benefits by reason of the challenged regulations. Recommended Decision, at 12. MAIN does not dispute the Magistrate's conclusion, but asserts that the proper remedy is remand. Plaintiff's Objections To Magistrate's Recommended Decision.

Under the first prong of the *Hunt* test MAIN must allege that its members, or any *one* of them, are suffering immediate or threatened injury as a result of the challenged action of a kind that would make out a justiciable claim had those individual members brought suit. *See Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1974). Individual standing to sue for injunctive relief depends, *inter alia,* on the likelihood of injury to the claimant as a result of the challenged practices. *Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). MAIN has not identified any sub-member[5] who has been injured, or who is immediately threatened with injury, by the new regulations.[6]

More importantly, MAIN fails to allege the *exact nature of the injury* suffered by any of its sub-members. Such allegations are necessary to allow the court to determine the justiciability (standing; live controversy; ripeness) of these claims. *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3529. *See also MAIN v. Petit & Heckler,* 700 F.Supp. 75 (D.Me.1986) at 78 (first *Hunt* requirement not met, because MAIN failed to allege sufficient facts to allow court to determine ripeness).

The Magistrate correctly concluded that MAIN lacks standing.

*Remand or Dismissal*

■ MAIN contends that the Magistrate was required to remand the case. Plaintiff's Objections To Magistrate's Recommended Decision. MAIN asserts that it has standing to bring the action in Maine Superior Court under Me.Rev.Stat.Ann. tit. 5, § 8058 (1979) and Me.Rev.Stat.Ann. tit. 14, § 5951 (1978). MAIN relies on title 28 United States Code, section 1447(c), which, MAIN claims, *requires* remand in the absence of standing. Plaintiff's Memorandum In Support of Objections To Magistrate's Recommended Decision, at 5. Lack

---

**5.** The Secretary notes that MAIN is not raising any claim in behalf of *its* members, but in behalf of the *members of its members.* Memorandum of Secretary Bowen, at 6. However, the Supreme Court recently rejected this "standing within standing" objection. *See New York State Club Association v. City of New York,* —— U.S. ——, ——, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988).

**6.** Nor has plaintiff alleged facts which show that naming such an individual would "chill" fundamental rights. *See N.A.A.C.P. v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958); *Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 79–81, 81 S.Ct. 1357, 1401–02, 6 L.Ed.2d 625 (1961).

of standing is a jurisdictional defect which requires the federal court to *remand* a case improvidently removed under section 1441. *See Langford v. Gates*, 610 F.Supp. 120, 123 (C.D.Cal.1985).

■ When a case has been removed pursuant to section 1442(a)(1), however, lack of standing requires *dismissal*, notwithstanding the fact that the plaintiff may have standing in state court. *Maine Association of Independent Neighborhoods v. Petit*, 644 F.Supp. 81, 84–85 (D.Me.1986). As explained below, the court *deems* this case to have been removed pursuant to title 28 United States Code, section 1442(a)(1).

The court relies on two related grounds for its determination that this suit was removed pursuant to section 1442(a)(1). First, the court determines the Secretary to have been an indispensable party at the time of removal. Second, the Secretary has announced the intention to seek removal pursuant to section 1442(a)(1) should the court remand the case.

■ The Secretary was an indispensable party at the time of removal, *see* Fed.R.Civ. P. 19(b), because the Commissioner would have no authority to change the challenged state regulations as demanded by plaintiff. Should the court grant the requested relief, the Commissioner would not be in compliance with federal regulations, and the State of Maine would be subject to sanctions. *See* 42 U.S.C. § 604 (as a condition of future receipt of funds, state must operate its program in conformity with federal regulations). Thus, if the requested relief were granted without joinder of the Secretary, the Commissioner would be subject to inconsistent obligations, and absent joinder of the Secretary such a judgment could not provide plaintiff with an adequate remedy. *See* Fed.R.Civ.P. 19(b).

■ In suits against an inferior federal official, the superior is an indispensable party where the action involves an attack on regulations and policies which only the superior has the authority to alter. 7 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1622 (1986). The same rule applies where suit is brought against the state administrator of a cooperative federal-state program. *See Pegues v. Mississippi State Employment Service*, 57 F.R.D. 102, 105 (N.D.Miss.1972) (Secretary of Labor *indispensable* party in suit for modification of state's existing classification, testing and referral procedures, as such modification would require state defendant to violate federal regulations and thereby subject the state to federal penalties). *See also McCowen v. Jamieson*, 724 F.2d 1421, 1423–1424 (9th Cir.1984) (Secretary of Agriculture *necessary* party to suit challenging state method of distribution of food stamps); *Lopez v. Arraras*, 606 F.2d 347, 352–353 (1st Cir.1979) (Secretary of HUD *necessary* party to suit challenging Puerto Rico housing program; court did not decide whether HUD was an *indispensable* party, since it appeared feasible to join HUD).

The Secretary, as a third-party defendant, would be entitled to remove the entire action pursuant to sections 1442(a)(1) and 1446(b), *IMFC Professional Services v. Latin American Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir.1982), which is significant for two reasons. First, the Secretary was not able to petition for removal under section 1442(a)(1), *see* 28 U.S.C. § 1446(a), (b), as the case had been removed before the Secretary was made a party. The Secretary's stated intention to remove the case upon remand demonstrates that he intends to make use of his right to a federal forum. Second, as the Secretary is an indispensable party, upon remand and removal by the Secretary pursuant to section 1442(a)(1) plaintiff's lack of standing would require dismissal of the entire action. *See Petit*, 644 F.Supp. at 84–85. In these circumstances, remand would work an unwarranted waste of state and federal judicial resources and would waste the time and resources of the litigants as well.

In these unique circumstances the court deems the case to have been removed pursuant to section 1442(a)(1) *ab initio*. A trial court on its own motion may examine the propriety of removal and recharacterize the removal. *See Walker v. Gibson*, 604 F.Supp. 916, 919 (N.D.Ill.1985) (Although plaintiff obtained removal under the Feder-

 

al Driver's Act, 28 U.S.C. § 2679(b)–(e), the court, *sua sponte*, determined that the removal had been improper under that statute but that it possessed removal jurisdiction under section 1442(a)(1).) *See also National Audubon Society v. Department of Water*, 496 F.Supp. 499, 503–504 (M.D.Fla. 1980) (court may order amendment of petition to assert section 1442 as basis for removal, instead of section 1441, which was incorrectly asserted).[7] The case having been removed pursuant to section 1442(a)(1), plaintiff's lack of standing would require dismissal rather than remand.

Prior to a dismissal and because the parties have not addressed the matter of section 1442(a)(1) removal, the court considers it appropriate to permit MAIN to move to amend its complaint as to its standing to bring the action. *See Warth v. Seldin*, 422 U.S. at 501–502, 95 S.Ct. at 2206–07 ("It is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, standing does not adequately appear from all materials of record, the complaint must be dismissed.")

Accordingly, plaintiff is allowed 30 days within which to amend its complaint, with supporting memorandum, to demonstrate its standing to bring the present action. Defendant shall respond within 20 days of such motion. Should plaintiff not file a timely motion to amend, the action shall be DISMISSED.

SO ORDERED.

---

**THOMAS O'CONNOR & COMPANY, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 88–1638–C.**

United States District Court, D. Massachusetts.

Oct. 12, 1988.

---

7. Alternatively, the court could treat the *Commissioner's removal* as having been had pursuant to section 1442(a)(1). In his petition for removal, the Commissioner asserted that:

> 4. This action may be removed pursuant to 28 U.S.C. § 1441(b) because the claims or rights asserted arise under the laws of the United States. The Plaintiff in this action alleges a violation of rights secured by the Social Security Act, more specifically by that portion of the Act that governs the treatment of the income of sanctioned individuals and the treatment of windfall payments to recipients in the Aid to Families with Dependent Children (AFDC) Program, 42 U.S.C. § 601 *et seq.*
>
> 5. This action is *also appropriate for removal because it concerns laws and regulations administered by the United States Department of Health and Human Services,* which is a party necessary to this action in order to ensure its equitable resolution and which may not be subject to the jurisdiction of the State Court.

Petition for Removal, at 2 (*emphasis added*).

The Commissioner's petition for removal, along with the allegations in plaintiff's complaint, assert sufficient facts to establish that the Commissioner was "one acting under an officer of the United States" within section 1442(a)(1). *See, e.g.,* Complaint, at 27: "Maine would not have changed its treatment of windfall payments but for a change in the federal interpretation of 42 U.S.C. § 602(a)(17)." *See also Neurological Associates v. Blue Cross/Blue Shield*, 632 F.Supp. 1078, 1080 (S.D.Fla.1986) (Blue Cross/Blue Shield was entitled to removal under section 1442(a)(1) as a fiscal intermediary under the U.S. Department of Health and Human Services).

Steven J. Comen, Hinckley, Allen, Snyder & Comen, Boston, Mass., for plaintiff.

James J. Myers, Robert J. Kaler, Gadsby & Hannah, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff subcontractor, Thomas O'Connor & Co., Inc. ("O'Connor"), has brought this action against Insurance Company of North America ("INA") for payment under a surety bond. INA is the payment bond surety of Distral Energy Corporation ("Distral"), the general contractor. This case is before the Court on defendant's motion to stay proceedings pending arbitration between O'Connor and Distral. Defendant requests a stay of this Court's proceedings pursuant to section 3 of the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Court's inherent powers to control its docket. After a hearing and consideration of the pleadings, and for the reasons discussed below, this Court rules that defendant's motion to stay proceedings pending arbitration should be allowed.

In February of 1986, Distral, along with certain other general contractors, entered into a contract ("the Warren Contract") with Warren Energy Resource Co., Limited Partnership. The contract provided for construction work to be performed on the Warren County New Jersey Resource Recovery Project ("the Resource Recovery Project") in Warren County, New Jersey. The Warren Contract included an arbitration clause covering all "claims or disputes" between the parties arising in connection with performance of work under the contract.[1]

---

1. The arbitration clause is contained in Article 26 of the Warren Contract. Article 26 provides:

All claims or disputes between the Company and Vendor occurring during or after perform-

The Warren Contract also required Distral to secure a payment bond. Pursuant to that contract provision, Distral executed a payment bond with INA, the defendant in the present case. INA bound itself to pay all persons furnishing "labor, services, materials or supplies" under the Warren Contract in the event Distral failed to make timely payment. The payment bond also states that the Warren Contract is by reference made part of the bond.

In a subcontract ("the Subcontract") dated March 10, 1987, between Distral and O'Connor, O'Connor agreed to install two boiler units and two external economizer units as part of the Resource Recovery Project. The Subcontract incorporates by reference certain general conditions listed in the Warren Contract, including the arbitration clause and the payment bond provision.

O'Connor now seeks to recover $1,108,-402.52 under the INA payment bond for "labor, services, materials, and supplies for use in the prosecution of the work" performed under the Subcontract (*See* Complaint ¶¶ 3–5). The plaintiff has concurrently filed a demand for arbitration against Distral, pursuant to the arbitration clause. O'Connor has attempted, therefore, to bring its claim for payment regarding work performed on the Resource Recovery Project in two different forums.

■ It is clear that INA is entitled to rely on the arbitration clause included in the Warren Contract. The payment bond executed by Distral with INA as surety explicitly incorporates by reference the Warren Contract. As described earlier, the Warren Contract contains an arbitration clause which states that "all claims or disputes" arising in connection with the performance of work under the agreement "shall be determined by binding arbitra-

tion...." It is also apparent that O'Connor is bound by the arbitration clause, as the Subcontract explicitly incorporates by reference the arbitration provision in the Warren Contract. O'Connor cannot be heard to invoke the protection of the INA payment bond, as incorporated by reference in the Subcontract, while disavowing incorporation of the arbitration clause in the bond as well as the Subcontract. *See, e.g., Exchange Mutual Insurance Co. v. Haskell Co.,* 742 F.2d 274 (6th Cir.1984) (sound approach is to allow arbitration where the surety bond includes by reference the obligation to arbitrate); *J & S Construction Co., Inc. v. Travelers Indemnity Co.,* 520 F.2d 809 (1st Cir.1975) (where contract was explicitly incorporated by reference in the surety bond, the surety, although not a party to the construction contract, could assert contractual right under arbitration clause). *Cf. Cost Brothers, Inc. v. Travelers Indemnity Co.,* 760 F.2d 58 (3rd Cir.1985) (surety may not compel subcontractor to submit its dispute to arbitration where surety is not a party to the agreement to arbitrate and the bond does not incorporate by reference the underlying agreement).

■ Section 3 of the United States Arbitration Act ("the Act") requires a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the action pending arbitration once the court is satisfied that the issue is arbitrable under the agreement. 9 U.S.C. § 3. 13 B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3569, p. 169. A motion to stay proceedings will not be granted pursuant to § 3 unless the contract in question evidences a transaction involving interstate commerce. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 201–02, 76 S.Ct. 273, 275–76, 100 L.Ed.

ance of the Work or after termination of the Work or this Contract which have not been resolved to the satisfaction of either the Company or Vendor by the decision of the Construction Manager or the Engineer shall be finally determined by binding arbitration in accordance with the provisions of the Construction Industry Rules of the American Arbitration Association by arbitrators in accordance with said

Rules. The parties acknowledge that this Contract evidences a transaction involving commerce and that the agreement to arbitrate is governed by and enforceable under 9 U.S.Code, Section 1, *et seq.* The place of arbitration shall be Birmingham, Alabama, U.S.A. Vendor shall not discontinue, hinder or delay the Work in any way during the pendency of arbitration.